IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHARLES D.  LINDLEY                                                                    PLAINTIFF

v.                                     Case No.  4:20-cv-00795 KGB

ALYZEN MEDICAL PHYSICS, INC.
And MARK DEWEESE                                                          DEFENDANTS

<u>**ORDER**</u>

Before the Court is plaintiff Charles D. Lindley's motion to disqualify counsel for defendants Alyzen Medical Physics, Inc. ("Alyzen") and Mark Deweese (Dkt. No. 31). Defendants responded in opposition to the motion (Dkt. No. 34), and Mr. Lindley replied (Dkt. No. 36).  For the following reasons and on the record before it, the Court denies Mr. Lindley's motion to disqualify counsel (Dkt. No. 31).

> **I.      Summary Of Arguments**

Mr. Lindley commenced this action for damages against defendants, alleging that defendants breached both oral and written agreements made between defendants and Mr. Lindley to compensate Mr. Lindley for services he provided to defendants relating to the sale of Alyzen (Dkt. No. 16, ¶¶ 7–12, 24).  Mr. Lindley brought claims against defendants for breach of contract, promissory estoppel, and fraud (*Id.*, ¶¶ 23–40).  This Court dismissed Mr. Lindley's fraud claims (Dkt. No. 44; his claims for breach of contract and promissory estoppel remain.

Mr. Lindley now moves to disqualify defendants' counsel of record Perry L. Wilson on the ground that Mr. Wilson will be a material witness in the current action (Dkt. No. 32, at 2).  Mr. Lindley argues that Mr. Wilson's knowledge of the underlying controversy of the current action makes him a material witness and therefore disqualifies him as counsel for defendants (Dkt. No. 32, at 4).  Mr. Lindley asserts that, during the sale of Alyzen, Mr. Wilson acted as counsel for

defendants and "worked closely" with both defendants and Mr. Lindley (Dkt. No. 32, at 3).  Mr. Lindley claims that Mr. Wilson was an "integral part" of both the negotiations between Mr. Deweese and Mr. Lindley as well as those with Company A and Company B regarding the sale of Alyzen (Dkt. No. 32, at 3).  Mr. Lindley asserts that Mr. Wilson "had a role in drafting the purchase agreement language" of the sale of Alyzen and was part of the correspondence in the finalizing of the sale of the company (Dkt. No. 32, at 3-4).  Mr. Lindley also submits that Mr. Wilson's testimony would be material to defendants' counterclaims because of his knowledge of Mr. Lindley's conduct throughout the sale of Alyzen (Dkt. No. 32, at 4).  Finally, Mr. Lindley asserts that, because Mr. Wilson should be disqualified as counsel for defendants, the Barber firm to which Mr. Wilson belongs must also be precluded from representing defendants (Dkt. No. 32, at 5).

Defendants respond that Mr. Wilson is not a material witness to the underlying controversy of the current action and that his testimony is not unique (Dkt. No. 35, at 4-5).  Defendants assert that Mr. Lindley himself and Mr. Deweese would be sufficient witnesses on the topics for which Mr. Lindley claims Mr. Wilson has knowledge (Dkt. No. 35, at 4-5).  According to defendants, the matters for which Mr. Lindley asserts that Mr. Wilson has necessary knowledge are "matters on which [Mr.] Wilson is either entirely unqualified to testify, or else not uniquely qualified to do so" (Dkt. No. 35, at 6).  Regarding defendants' counterclaim, defendants argue that Mr. Wilson is not a material witness to that claim either because Mr. Wilson did not have any "special knowledge" regarding Mr. Lindley's conduct during the sale of Alyzen (Dkt. No. 35, at 6-7).

Defendants submit that, even if Mr. Wilson is determined to be a material witness, his disqualification would cause "substantial hardship" to defendants because Mr. Wilson's disqualification would "deprive [defendants] of their chosen counsel" (Dkt. No. 35, at 7).  Defendants express their desire to be represented by Mr. Wilson and the Barber firm and assert

that disqualification of Mr. Wilson and the Barber firm would result in "unnecessary delay" and "substantial expense" (Dkt. No. 35, at 8).

Further, defendants argue that, even if Mr. Wilson is a material witness in the current action and his testimony is necessary, any unique testimony he would give is protected by the attorney-client privilege and the work product doctrine (Dkt. No. 35, at 9). Defendants assert that any legal services or advice given to defendants in the course of the sale of Alyzen would fall within the protections of the attorney-client privilege (Dkt. No. 35, at 10). Defendants also submit that any of Mr. Wilson's opinion work product, including "legal advice, opinions, or strategy," created during the course of the sale of Alyzen would be protected by the work product doctrine (Dkt. No. 35, at 10-11). Defendants believe that, because the impressions and insights of Mr. Wilson would be protected by the attorney-client privilege and the work product doctrine, his testimony should not be included (Dkt. No. 35, at 11).

Finally, defendants submit that, even if the Court does disqualify Mr. Wilson as counsel for defendants, the Barber firm should be able to continue representing defendants because such a conflict would be waivable (Dkt. No. 35, at 12). Defendants argue that allowing the Barber firm to continue to represent defendants would not be unlawful and that, because Mr. Lindley himself is not a client of the Barber firm, the Barber firms's continued representation of defendants would not "implicate any claim of one of its clients against another" (Dkt. No. 35, at 12).

In his reply, Mr. Lindley again asserts that Mr. Wilson's knowledge acquired through his participation in the sale of Alyzen "makes him a necessary and material witness to both Plaintiff's and defendants' claims" (Dkt. No. 36, at 3). Mr. Lindley argues that Mr. Wilson's involvement in the sale of Alyzen puts him in "a unique position" to testify and positions him as "the only individual able to offer testimony" to certain aspects of the current action (Dkt. No. 36, at 3).

Because of this unique knowledge that Mr. Lindley claims is essential to the current action, Mr. Lindley stresses that he must be able to call Mr. Wilson as a material witness (Dkt. No. 36, at 5).

In response to defendants' argument that disqualification of Mr. Wilson would cause substantial hardship, Mr. Lindley argues that the Court should not give undue weight to this assertion since it was reasonably foreseeable that Mr. Wilson would be called as a witness in the current action (Dkt. No. 36, at 7).  Regarding defendant's privilege arguments, Mr. Lindley submits that the attorney-client privilege and the work product doctrine do not preclude or protect all of the testimony Mr. Wilson could provide because all of the communications made between the relevant parties here would not be protected except for any direct communications (Dkt. No. 36, at 8).  Finally, Mr. Lindley responds that waiver does not apply to the conflict that would arise if the Barber firm would continue to represent defendants and that the Barber firm should be disqualified from representing defendants as well (Dkt. No. 36, at 9).

## II.    Applicable Law

The decision of whether to grant or deny a motion to disqualify counsel rests solely within the discretion of the district court.  *Midwest Motor Sports v. Arctic Sales, Inc.*, 347 F.3d 693, 700 (8th Cir. 2003).  "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny."  *Id*. at 700-01 (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)).  This Court applies the Arkansas Rules of Professional Conduct, as adopted by the Arkansas Supreme Court, to motions to disqualify counsel.  *See, e.g.*, *Mid-State Aftermarket Body Parts, Inc. v. Truck Ins. Exch.*, Case No. 4:05cv01220 JLH, 2006 WL 8445028, at *2 (E.D. Ark. June 5, 2006).

Litigants are "entitled to substantial deference" in their choice of counsel.  *Saline Mem'l Hosp. v. Berry*, 906 S.W.2d 297, 301 (Ark. 1995).  Courts "must prevent litigants from using

4

motions to disqualify opposing counsel for tactical purposes." *Id.* at 302 (quoting *Hamilton v. Merrill Lynch*, 645 F.Supp. 60, 61 (E.D. Pa. 1986)).  Disqualification of counsel is "a drastic measure to be imposed only where clearly required by the circumstances." *Wiegel v. Farmers Ins. Co.*, 158 S.W.3d 147, 150 (Ark. 2004).

According to Rule 3.7 of the Arkansas Rules of Professional Conduct, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . disqualification of the lawyer would work substantial hardship on the client." Ark. R. Prof. Cond. 3.7(a)(3).  In *Wiegel*, the Arkansas Supreme Court adopted a three-pronged test to determine whether Rule 3.7 applies where an attorney must testify for the opposing party.  158 S.W.3d at 153.  Rule 3.7 applies to disqualify counsel under such circumstances if the opposing party can show:  "(1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client." *Id.*  A litigant's belief that counsel for the opposing party will be a "likely witness" is not a sufficient ground for disqualification.  *Utley v. City of Dover*, 101 S.W.3d 191, 202 (Ark. 2003).  The party seeking disqualification must prove that the attorney's "testimony could not be gained from any other witness or source." *Id.*

To determine whether the party seeking the attorney's disqualification will face prejudice, a court must examine "the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." Ark. R. Prof. Cond. 3.7, cmt. 4.  However, a court must give "due regard . . . to the effect of disqualification on the lawyer's client" even if the court finds a "risk of such prejudice." *Id.*  In the court's balancing analysis, "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.*

"While lawyers are associated in a firm, none of them shall knowingly represent a client when one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 3.7." Ark. R. Prof. Cond. 1.10(a).  However, "[a] disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7." Ark. R. Prof. Cond. 1.10(c).  Under Rule 1.7, if applicable, a concurrent conflict of interest can be waived if:  "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before the tribunal; and (4) each affected client gives informed consent, confirmed in writing." Ark. R. Prof. Cond. 1.7(b).

"In diversity actions, state law determines the existence and scope of attorney-client privilege."  *Gray v. Bicknell*, 86 F.3d 1472, 1482 (8th Cir. 1996).  Under Arkansas Rule of Evidence 502, communications between a client and his or her attorney or their respective representatives "for the purpose of facilitating the rendition of professional legal services to the client" are privileged.  Ark. R. Evid. 502.  Accordingly, "the attorney-client privilege only applies to confidential communications, not to those uttered in public or intended for disclosure to others or in fact disclosed by the client to others."  *Shankle v. State*, 827 S.W.2d 642, 646 (Ark. 1992).

The work product doctrine derives from Federal Rule of Civil Procedure 26(b)(3).  Under this Rule, "documents and tangible things" that are "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" are only discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Fed. R. Civ. P. 26(b)(3).

Against this backdrop, the Court examines Mr. Lindley's motion to disqualify counsel for the defendants.

### III.     Analysis

The Court concludes that Mr. Wilson should not be disqualified as counsel for defendants because Mr. Lindley has not met all three elements of the *Wiegel* test.  *See* 158 S.W.3d at 153. First, Mr. Lindley has failed to show that Mr. Wilson's testimony is material to the determination of the issues being litigated.  This case involves an alleged breach of an agreement between Mr. Deweese and Mr. Lindley under which Mr. Lindley claims that he should be paid a portion of the sale of Alyzen.  Mr. Lindley claims that, because Mr. Wilson was involved in the negotiation and sale of Alyzen, Mr. Wilson's testimony would be necessary to central issues in the case relating to the timeline of events as well as terms of contracts and promises that were created and alleged fraud that occurred (Dkt. No. 32, at 4).  Mr. Lindley also claims that Mr. Wilson's testimony would be necessary for defendants' counterclaims because of Mr. Wilson's knowledge of the timeline and negotiations of the sale of Alyzen (*Id.*).  However, Mr. Lindley's assertions about Mr. Wilson's testimony and the issues in contention to be addressed by such proposed testimony are not sufficient to overcome the "particularly strict judicial scrutiny" that must be given to a motion for disqualification of counsel.  *Midwest Motor Sports*, 347 F.3d at 700-701.  A litigant's belief that counsel for the opposing party will be a "likely witness" is not a sufficient ground for disqualification.  *Utley*, 101 S.W.3d at 202.

Second, even if Mr. Wilson's testimony were necessary to the issues here, Mr. Lindley has not shown that this information is unobtainable elsewhere.  Mr. Lindley must prove that Mr. Wilson's "testimony could not be gained from any other witness or source."  *Id.*  Mr. Lindley has failed to show that both he and Mr. Deweese would be insufficient sources of the information he

seeks from Mr. Wilson.  Mr. Wilson was not a party to any contract at issue in the current litigation (Dkt. No. 35, at 5).  Mr. Lindley does not explain, and the record before the Court does not reveal, how or why Mr. Wilson's testimony would be necessary and different than the testimony of Mr. Deweese and Mr. Lindley, the alleged promisor and promisee.

Third, Mr. Lindley has failed to show how Mr. Wilson's testimony would be prejudicial to defendants.  Mr. Lindley claims that Mr. Wilson could provide testimony regarding the timeline and the negotiations of the sale of Alyzen that would be necessary to defendants' counterclaims (Dkt. No. 32, at 4).  However, Mr. Lindley does not explain what this information would be specifically and how Mr. Wilson's purported testimony regarding it would be prejudicial to defendants.  The facts alleged by Mr. Lindley in support of his motion to disqualify are insufficient to show that Mr. Wilson's anticipated testimony would be prejudicial to defendants.

Mr. Lindley further claims that he will be prejudiced by not having the opportunity to call Mr. Wilson as a witness at trial (Dkt. No. 32, at 3–4).  As comment 4 of Rule 3.7 explains, courts apply a balancing test to determine whether a party seeking disqualification of the opposing party's counsel will face prejudice.  Ark. R. Prof. Cond. 3.7, cmt. 4.  Giving due regard to the potential detrimental effect that disqualification of defendants' counsel would have on defendants, the Court concludes, on the record before it at this stage of the litigation, that this effect outweighs any potential prejudice that Mr. Lindley might face because of a lack of opportunity to call Mr. Wilson as a witness.  Moreover, it is reasonable to believe that both parties could have foreseen Mr. Wilson as a witness, which further supports the decision not to disqualify counsel for defendants.

In sum, Mr. Lindley has failed to meet the elements of the three-pronged test outlined in *Wiegel*.  This Court therefore declines to "impose the drastic measure of disqualifying" counsel for defendants.  *See Helena Country Club v. Brocato*, 535 S.W.3d 272, 276 (Ark. 2018).

Because the Court makes this determination on Mr. Lindley's motion to disqualify Mr. Wilson as counsel, the Court declines to reach the issue of whether defendants could likely waive a conflict under Rule 1.7 with respect to other members of the Barber firm continuing as counsel in this case or whether any testimony provided by Mr. Wilson would be protected by the attorney-client privilege and the work product doctrine.  The Court need not resolve these issues to resolve the pending motion, based on the Court's determination.

## IV.   Conclusion

For these reasons and on the record before it, the Court denies Mr. Lindley's motion to disqualify counsel for defendants (Dkt. No. 31).

It is so ordered this 27th day of September, 2021.

_____
Kristine G. Baker
United States District Judge

9